356 So.2d 572 (1978)
PAUL M. DAVISON PETROLEUM PRODUCTS, Plaintiff-Appellant,
v.
L. T. BROWN, CONTRACTOR, INC., et al., Defendants-Appellants-Appellees.
No. 13479.
Court of Appeal of Louisiana, Second Circuit.
February 20, 1978.
Writs Granted and Denied May 19, 1978.
*573 Love, Rigby, Dehan & Love by Kenneth Rigby, Shreveport, for plaintiff-appellant, Paul M. Davison Petroleum Products.
Bleich, Hogg & James, Wright by Howard W. Wright, Jr., Ruston, Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for defendant-appellee-appellant, Hartford Accident & Indemnity Company.
Campbell, Campbell & Johnson by John T. Campbell, Minden, for defendants-appellees, L. T. Brown, Contractor, Inc. and L. T. Brown and A. D. McCullen, Individually and as a partnership.
Before BOLIN, HALL and JONES, JJ.
HALL, Judge.
Plaintiff, Paul M. Davison Petroleum Products, filed suit to recover the sum of $129,868.54 allegedly due for asphalt and other materials sold by plaintiff between July 10, 1970 and August 17, 1971 and used in connection with the construction of a portion of 1-20. Named defendants were (1) L. T. Brown Contractor, Inc., general or prime contractor with the Louisiana Department of Highways; (2) A. D. McCullen and L. T. Brown, subcontractor to whom the materials were sold; and (3) Hartford Accident and Indemnity Company, surety of the contractor. The defendants answered generally denying the indebtedness and pleading payment and improper application of payments. After trial the district court, in written reasons for decision, found that there was a balance of $3,194.40 due on the account and judgment was rendered for that amount, together with seven percent *574 interest from the date plaintiff filed a statement of the amount due pursuant to the Public Works Act, LSA-R.S. 38:2241, et seq.
Plaintiff appealed seeking an increase in the judgment to the full amount sued for. Defendants either appealed or answered the appeal seeking a small reduction in the amount of the judgment and a modification of the judgment to provide for legal interest only from the date of judicial demand.
Over a period of several years plaintiff furnished asphalt and other supplies and materials to State Hot Mix Corporation, a corporation engaged in highway construction work, frequently as subcontractor under contracts held by various entities in which L. T. Brown and A. D. McCullen were principals. The asphalt work on the 1-20 project was originally subcontracted by L. T. Brown Contractor, Inc. to State Hot Mix Corporation. In August 1969, while the 1-20 project was in progress but before any asphalt work had been done, State Hot Mix Corporation was in serious financial difficulty. McCullen and Brown, as a joint venture, undertook the completion of State Hot Mix Corporation's subcontracts, most of which were for projects on which McCullen and Brown companies were the prime contractors. At that time, State Hot Mix Corporation owed plaintiff $102,135.94 for materials purchased in connection with projects other than the 1-20 project. Plaintiff continued to sell material in connection with the various projects, billing State Hot Mix Corporation monthly on a running or open account basis. Some payments were made on the account. In March 1970, at which time there was a balance of $172,625.62 owed to plaintiff, plaintiff transferred the entire State Hot Mix account to the names of McCullen and Brown and started billing McCullen and Brown on the same basis. Thereafter, plaintiff continued to sell petroleum products to McCullen and Brown in connection with various projects, including the 1-20 project for which materials were furnished from July 1970 to August 1971. The 1-20 project was accepted by the Department of Highways in October 1971 and in November plaintiff timely filed its lien and privilege, claiming a balance due for materials sold in connection with that project of $129,868.54.
During the period of time after August 1969, substantial payments were made to plaintiff. If payments were designated for a particular project, they were so applied by plaintiff. If payments were not so designated, plaintiff applied the payments to the oldest unpaid invoices in the running or open account, including the invoices underlying the $102,000 owed by State Hot Mix Corporation on August 31, 1969 when McCullen and Brown stepped into the picture.
On September 29, 1969, a payment of $35,000 was made with a State Hot Mix Corporation check, without designation of how the payment was to be applied. Plaintiff was entitled to apply this payment to the oldest invoices owed by State Hot Mix. Thereafter, all payments were made by McCullen and Brown.
The central issue in this lawsuit is whether McCullen and Brown assumed and agreed to pay the State Hot Mix debt incurred prior to August 1969, in which case payments subsequently made by McCullen and Brown were properly applied to that debt, leaving a balance owing on the 1-20 project of approximately the amount sued for. If McCullen and Brown did not assume and agree to pay that debt, then the payments were improperly applied to that debt by plaintiff and the balance due on the 1-20 project is substantially reduced. Plaintiff's principal specification of error is that the trial court erred in holding that the evidence failed to establish that McCullen and Brown assumed the indebtedness of State Hot Mix Corporation.
Plaintiff relies principally upon the testimony of its office manager, Lovis Colvin. Colvin testified that in March 1970, Reese Hood, office manager for McCullen and Brown, called him on the telephone, advised him that State Hot Mix Corporation was no longer in existence, that the account should be transferred to the names of McCullen and Brown, a joint venture, and that *575 McCullen and Brown would be responsible for the account. Hood's version of the telephone conversation was that he instructed Colvin to transfer only that portion of the account incurred after August 1969 when McCullen and Brown undertook to complete the State Hot Mix subcontracts. Hood testified he had repeatedly asked Colvin and the Davisons to separate the State Hot Mix Corporation and the McCullen and Brown accounts since August and on numerous occasions objected to carrying the old State Hot Mix Corporation balance on the current statements. Colvin denied Hood's version and denied that any protests were ever made until after this suit was filed. James Davison, one of the partners in the plaintiff-partnership, testified that no protest was ever made to his knowledge. The other partner, Paul Davison, died after suit was filed and before the case went to trial.
McCullen and Brown denied that they ever intended or did, in fact, assume or agree to pay the State Hot Mix Corporation debt which existed when they took over in August 1969. They denied authorizing Hood to make any such agreement and testified their instructions to Hood were to get only that portion of the account incurred after August transferred to their names.
Plaintiff suggests that accounting entries appearing on the books of State Hot Mix Corporation and of the joint venture indicate an assumption of the debt. Plaintiff suggests that its version is further corroborated by the fact that some other debts of State Hot Mix Corporation, incurred prior to August 1969, were paid by McCullen and Brown.
The issue is entirely factual and was resolved contrary to plaintiff's position by the trial court which carefully analyzed and weighed the evidence. The burden was on plaintiff to prove an express agreement and a promise by McCullen and Brown to pay the preexisting debt of the Corporation, in order to support its application of payments to that debt. The testimony of the plaintiff's office manager, only obliquely corroborated by other circumstances, was insufficient to meet this burden. There was no evidence that either McCullen or Brown ever made such an agreement or promise.
It should be noted that defendants objected to the admission of any parol evidence of a promise by defendants to pay the debt of State Hot Mix, relying on LSA-C.C. Art. 2278(3) which provides that parol evidence shall not be received to prove any promise to pay the debt of a third person. The trial court correctly considered all of the evidence, including parol evidence, which was admissible under a well-recognized exception to Article 2278. If the agreement to pay is not made primarily to answer for another but is impelled from the pecuniary or business motives of the promissor, then the promise to pay is, in effect, a new and independent agreement and parol evidence is admissible to establish same. Wallenburg v. Kerry, 16 La.App. 221, 133 So. 823 (2d Cir. 1931); Schloegel v. New Orleans Disposal Service, 261 So.2d 108 (La. App. 4th Cir. 1972); Collier v. Brown, 11 La.App. 567, 141 So. 405 (2d Cir. 1932); Rube v. Pacific Insurance Company of New York, 131 So.2d 240 (La.App. 1st Cir. 1961); Flick v. Salloum, 163 So.2d 143 (La.App. 4th Cir. 1964); Pace v. Rizzuto, 182 So.2d 809 (La.App. 4th Cir. 1966). In this case, as prime contractors on the 1-20 and other projects, McCullen and Brown had pecuniary and business interests that would be served by seeing that the debts of its subcontractor were paid. Had they made a promise to pay the debt of State Hot Mix Corporation, it would come within the exception and be provable by parol evidence. The holding of the trial court in this case, however, was that even considering the parol evidence offered, plaintiff failed to prove the promise to pay. The trial court's finding is supported by sufficient evidence. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The effect of this holding that McCullen and Brown did not assume the debt owed by State Hot Mix Corporation is to make plaintiff's application of payments paid by McCullen and Brown to that debt improper and, consequently, the balance due on the *576 running account attributable to the 1-20 project is reduced by the amount improperly applied.
The trial court reduced the amount due by $102,135.94, the amount owed by State Hot Mix in August 1969. As pointed out earlier, a payment of $35,000 made by State Hot Mix was properly applied to that debt, so the amount of reduction should be $102,135.94, less $35,000, or $67,135.94. Stated otherwise, the amount of the judgment in favor of plaintiff should be increased by $35,000.
The trial court further found that $17,271.33 of the amount claimed was for a service charge of one percent per month made by plaintiff without having been agreed to by defendants. Plaintiff is not entitled to charge interest or a service charge without an express agreement in writing. LSA-C.C. Art. 2924. See also Southern Equipment & Tractor Company of Shreveport, Inc. v. A. D. McCullen and L. T. Brown, et al., 319 So.2d 511 (La.App. 2d Cir. 1975).
The amount plaintiff sought to recover also did not take into account a $7,266.87 credit memo issued by plaintiff to defendants adjusting the price for certain products billed in excess of the amount which plaintiff had agreed to charge. Although plaintiff claims the credit was to be allowed only if defendants paid the balance due in full, the evidence supports a finding that there was an overcharge and the adjustment was properly made by the trial court.
Defendants point out three additional credits which should have been allowed against the account. One is a nonlienable transportation charge of $228; another is a charge to L. T. Brown, Inc., in the amount of $290.47 that should not have been included in the McCullen and Brown account; and the other is an error in a charge for asphalt of $24.72; or a total of $543.19. The judgment will be amended to reflect these credits.
Legal interest on the balance due on an open account is allowable only from date of judicial demand. LSA-C.C. Art. 1938; Mochitta v. Lemak, 165 So.2d 568 (La.App. 1st Cir. 1964). The judgment will be amended to provide for legal interest from date of judicial demand rather than from date of filing the lien and privilege.
For the reasons assigned, the judgment of the district court is amended to increase the amount thereof to $37,651.24 and to provide for legal interest thereon from date of judicial demand until paid. As amended, the judgment is affirmed. Costs of the appeal are assessed to the defendants in the same manner as provided in the judgment appealed from.