665 So.2d 1316 (1995)
DEUTSCH, KERRIGAN & STILES
v.
Ralph FAGAN, et al.
DEUTSCH, KERRIGAN & STILES
v.
Ralph G. FAGAN.
Nos. 95 CA 0811, 95 CA 0812.
Court of Appeal of Louisiana, First Circuit.
December 15, 1995.
Writ Denied March 15, 1996.
*1318 Daniel A. Smith, David C. Treen, New Orleans, for Appellee, Deutsch, Kerrigan & Stiles.
Stephen E. Caillouet, Thibodaux, for Appellants, Ralph Fagan, et al.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
GONZALES, Judge.
This appeal involves two consolidated cases in which the law firm of Deutsch, Kerrigan, and Stiles was granted judgments in its favor for the payment of attorney fees for services rendered to Ralph Fagan and a number of corporations.

FACTS AND PROCEDURAL HISTORY
Ralph Fagan is the chief executive officer and majority shareholder of several oil field service companies, including Fagan Enterprises, Inc., Toddell Enterprises, Inc., Fagan Boat Service, Inc., Futuristic Boats, Inc., and Kim Susan, Inc. He was indicted in Houston, Texas, on various federal charges including obstruction of justice, intimidation of a witness, and multiple counts of mail fraud. The charges stemmed from kickbacks Fagan paid to obtain contracts with Texoma Production Company (Texoma). Fagan and his companies were also sued civilly by Texoma, based on Fagan's participation in the kickback scheme. In the civil litigation, Texoma alleged fraud and anti-trust claims, and sought compensatory damages totaling $3,000,000.00 plus punitive damages, interest, and attorney fees.
In 1986, Fagan contacted David Treen, a partner in the law firm of Deutsch, Kerrigan, and Stiles (DKS), seeking assistance in obtaining a change of venue to New Orleans, Louisiana, in the criminal case pending against him. Despite Treen's efforts, a change of venue was ultimately denied and Fagan was subsequently convicted. Thereafter, DKS represented Fagan in several postconviction matters. In April 1991, DKS filed suit against Fagan in the Seventeenth Judicial District Court (docket number 68641), seeking recovery of a principal sum of $2,826.24 in outstanding legal fees associated with DKS's representation of Fagan in the criminal case.
Also in 1986, Fagan engaged the services of DKS to represent him and his companies in the pending civil litigation wherein he and his companies were being sued by Texoma. After the expenditure of substantial legal efforts, a settlement was reached whereby Fagan's companies were to pay approximately $125,000.00 to Texoma, with no personal liability allocated to Fagan.
In May of 1990, DKS[1] filed suit against *1319 Fagan and several of his companies[2] in the Seventeenth Judicial District Court (docket number 65998), seeking recovery of a principal sum of $37,111.90 in outstanding legal fees associated with DKS's representation of Fagan and his companies in the civil case.
On March 15, 1993, the trial court ordered the two cases consolidated. After a trial on the merits, judgments were rendered on August 10, 1994 in favor of DKS. Regarding DKS's suit for legal fees associated with Fagan's criminal case, the trial court rendered judgment against Fagan for $2,826.24 plus attorney fees in the amount of $750.00. Regarding DKS's suit for legal fees associated with the civil case, the trial court rendered judgment against Fagan, Fagan Enterprises, Inc., and Toddell Enterprises, Inc., in solido, for $37,111.90 plus attorney fees in the amount of $9,500.00.
Fagan and his three companies appeal the judgments, asserting the following assignments of error:
(1) The trial court erred in ruling that there was a balance due to DKS for attorney fees.
(2) The trial court erred in failing to apportion any balance due for attorney fees between the eight separate and distinct individual and corporate entities which DKS represented in the civil case.
(3) The trial court erred in ruling that Ralph Fagan was primarily responsible for the payment of all attorney fees for himself and the seven corporate defendants in the civil case.
(4) The trial court erred in ruling that the defendants are liable to DKS "in solido."
(5) The trial court erred by allowing, over defendants' objections, parol evidence to be used to establish a promise to pay the debt of a third person.
(6) The trial court erred in awarding attorney fees to DKS and/or the amount of attorney fees as set forth in the judgments are excessive and not supported by the evidence.
(7) The trial court erred in granting judgments that are contrary to the law and the evidence and by not granting defendants' motion for new trial.
Although this opinion does not address each assignment of error individually, it adequately disposes of all issues raised.

ATTORNEY FEES ASSOCIATED WITH THE CRIMINAL CASE
In his brief to this court, Fagan admits that DKS provided services to him in the criminal case, but argues that the approximate $25,000.00 already paid to DKS is adequate compensation for the services provided. It is Fagan's position that the additional $2,826.84 awarded to DKS "is clearly excessive and was not earned by plaintiff."
The trial court found that DKS provided numerous services to Fagan in connection with the criminal case. In its reasons for judgment, the trial court stated:
Fearing that he would not receive a fair trial in Houston, Fagan sought the services of Dave Treen, a DK & S partner, in January 1986 to obtain a change of venue to New Orleans, Louisiana.
Treen advised Fagan that venue probably would not be changed. Fagan, however, insisted that he go forward. Treen provided numerous services for Fagan including conferring with the United States Attorneys in Houston and New Orleans and researching and drafting arguments. The motion was denied and Fagan was subsequently convicted.
DK & S also represented Fagan in various post conviction matters. Treen again conferred with the United States Attorney *1320 in Houston, requested that Fagan's friends and associates submit letters for inclusion in the presentence report, and explored the availability of alternate sentences. After Fagan was sentenced to a two year term of imprisonment, Treen filed and argued a motion to clarify the sentence, submitted an application to the Board of Pardons, and worked diligently to secure Fagan's early release.
Although Treen repeatedly advised Fagan that much of the work he was asked to undertake had little chance of success, Fagan insisted that no effort by spared. Apparently disappointed with the results, Fagan refused to pay DK & S's final two invoices. Neither Treen nor DK & S guaranteed favorable results and undertook only to provide quality legal services, which they did. (footnote omitted)
DK & S's invoices accurately reflect services rendered and expenses incurred. Since Fagan has failed to establish any defense to this obligation, judgment will be rendered in favor of DK & S.
DKS brings this suit under La.R.S. 9:2781 which provides a cause of action to recover for debts incurred on open account for professional services rendered. Under La.R.S. 9:2781(C), "open account" includes debts incurred for legal services. In proving an open account, the plaintiff must first prove the account by showing that the record of the account was kept in the course of business and by introducing supporting testimony regarding its accuracy. Once a prima facie case has been established by the plaintiff-creditor, the burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits. The amount of an account is a question of fact which may not be disturbed absent manifest error. Jacobs Chiropractic Clinic v. Holloway, 589 So.2d 31, 34 (La.App. 1st Cir.1991).
In this case, DKS introduced invoices and detailed billing statements generated and kept in the course of its business which establish that the final two invoices sent to Fagan in connection with the criminal case were not paid. Further, David Treen testified that the balance due to DKS for services rendered in the criminal case is $2,826.24. The record contains no proof by Fagan that the amount billed to him in the criminal case was inaccurate or that he is entitled to any credit. Other than general allegations in brief that DKS's charges were excessive and that DKS did not earn the fees billed, Fagan points to no evidence justifying his refusal to pay the final balance owed to DKS in the criminal case.
We find no manifest error in the trial court's award of $2,826.24 to DKS for services rendered in the criminal case.

ATTORNEY FEES ASSOCIATED WITH THE CIVIL CASE
The next issue presented by this appeal is the correctness of the trial court's judgment awarding $37,111.90 to DKS for legal services rendered in connection with DKS's representation of Fagan and several of his companies in the civil litigation. The judgment was rendered against Ralph G. Fagan, Fagan Enterprises, Inc., and Toddell Enterprises, Inc. (the defendants), in solido.
The defendants argue that the trial court erred in adjudging Fagan primarily liable for the payment of all attorney fees for himself and the corporate defendants in the civil case. They also argue that the trial court erred in characterizing the debt as solidary, and in allowing, over defendants' objection, parol evidence to establish a promise by Fagan to pay the debt of a third person.
Louisiana Civil Code article 1847 provides that "[p]arol evidence is inadmissible to establish ... a promise to pay the debt of a third person...." A well-recognized exception to this rule includes instances wherein the oral promise to pay is prompted by a pecuniary or business motivation on the part of the promisor. Fontenot v. Miss Cathie's Plantation, Inc., 93-926, 93-927 (La. App. 3d Cir. 3/2/94), 634 So.2d 1380, 1381-1382; Rube v. Pacific Insurance Company of New York, 131 So.2d 240, 245 (La.App. 1st Cir.1961). The exception applies only in those instances where the promisor, by promising to pay the debt of a third person, assumes a primary obligation, rather than a collateral or secondary obligation. Fontenot *1321 v. Miss Cathie's Plantation, Inc., 634 So.2d at 1382. If the agreement to pay is not made primarily to answer for another, but is impelled from the pecuniary or business motives of the promisor, then the promise to pay is, in effect, a new and independent agreement and parol evidence is admissible to establish the existence of the agreement. Paul M. Davison Petroleum Products v. L.T. Brown, Contractor, Inc., 356 So.2d 572, 575 (La.App.2d Cir.), amended on other grounds, 364 So.2d 583 (La.1978).
The question of whether the obligation made by the promisor is primary or collateral is a factual determination. Fontenot v. Miss Cathie's Plantation, Inc., 634 So.2d at 1382. Upon review, an appellate court cannot disturb the trial court's factual findings absent manifest error. Ferrell v. Fireman's Fund Insurance Co., 94-1252 (La. 2/20/95), 650 So.2d 742, 745-746. The trial court found that there was an agreement between Fagan and DKS whereby Fagan agreed to be liable for all legal fees incurred by himself and his companies in connection with the civil litigation. In its reasons for judgment, the trial court stated:
Before agreeing to represent the defendants, Bernard Marcus, who was then DK & S's managing partner, met with Fagan to discuss fees. Fagan proposed allocating a portion of the fees to the corporate defendants. Marcus insisted, however, that Fagan agree to be personally liable for all fees and expenses. Marcus told Fagan that DK & S would regard him as their primary client and would look to him for payment. Marcus testified that it was not a question of "guaranteeing" the corporate debt, but of who was responsible for the fees. Fagan told Marcus that he understood and agreed to DK & S's terms.
* * * * * *
When DK & S agreed to represent the defendants, it did not routinely utilize formal, written retainer agreements. Subsequently, however, it became apparent that DK & S might be forced to sue in order to collect its fees. Treen prepared a retainer agreement for Fagan's signature. Fagan repeatedly told Treen not to worry and assured him that he would pay the fees. He refused to sign the agreement, however, claiming that his bankruptcy attorney advised him to sign no document that might permit "piercing the corporate veil."
At trial[,] Fagan denied that he agreed to pay for services rendered to the corporate defendants. He also argued that in the absence of a written instrument he could not be held liable as a guarantor of the corporations' debts.
Marcus and Treen were credible witnesses. It is improbable that DK & S would have undertaken to represent the corporate defendants without Fagan's assurances. Moreover, Fagan's credibility is weakened by his acknowledged false testimony in the Texoma proceeding, by his conviction for criminal activities involving fraudulent conduct, and by obvious misstatements in his trial testimony.
DK & S undertook to represent the defendants only on the condition that Fagan would be primarily liable for all fees and expenses, including those for services rendered to the corporate defendants. This condition was expressly conveyed to Fagan by Marcus and reiterated by Treen. Fagan expressly agreed to DK & S's terms and repeatedly acknowledged his obligation to pay.
* * * * * *
Solidarity is not presumed; it "arises from a clear expression of the parties' intent or from the law." LSA-C.C. art. 1796. Although parol evidence may not be used "to establish ... a promise to pay the debt of a third person ...," a writing is not required "when the promisor had a material interest in making the promise and has received something in return therefor." LSA-C.C. art. 1847; Revision Comments1984, sec. (d). As the principal shareholder of the corporate defendants[,] Fagan had a material interest in securing legal services both for them and for himself. These services would not have been rendered without his agreement to be liablenot secondarily as a guarantorbut primarily as the principal debtor. See Youngblood v. Pendleton, 446 So.2d 946 (La.App. 3rd Cir.1984).

*1322 Accordingly, DK & S is entitled to judgment against Fagan, Fagan Enterprises, Inc., and Toddell Enterprises, Inc. in solido.

We find no manifest error in the trial court's determination that Fagan made a primary obligation to be liable for all legal fees for himself and the corporate defendants in the civil case. As the chief executive officer and majority shareholder of all of the corporations, it is obvious that Fagan had a substantial pecuniary interest in obtaining legal services to defend himself and his companies against a potential liability exposure of $3,000,000.00 plus punitive damages. Further, the fact that the companies benefitted from DKS's representation does not negate Fagan's promise to be primarily liable for all attorney fees associated with the representation. Thus, the use of parol evidence, in the form of testimony by Marcus and Treen, to establish the existence of Fagan's agreement to be primarily liable was not erroneous.
Further, we find no manifest error in the trial court's assessment of the credibility of the parties involved. Credibility determinations are subject to the strictest deference and the manifest error-clearly wrong standard demands great deference for the trier of fact's findings. Theriot v. Lasseigne, 93-2661 (La. 7/5/94), 640 So.2d 1305, 1313. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). Despite Fagan's unwavering position that he never agreed to pay legal fees for the corporate defendants, the trial court apparently gave more weight to the testimony of Bernard Marcus and David Treen, who consistently maintained that Fagan orally promised to be responsible for all legal fees incurred in the civil litigation. The trial court's decision to believe Marcus and Treen rather than Fagan was not manifestly erroneous.
We also find no error in the trial court's determination to hold Fagan, Fagan Enterprises, Inc., and Toddell Enterprises, Inc. solidarily liable for fees owed to DKS in connection with the civil litigation. The trial court apparently found a clear expression of the parties' intent to be solidarily bound. This determination is not in error.
Finally, we find no error in the amount of fees awarded to DKS for its representation of Fagan and his companies in the civil litigation. The record establishes that the Texoma suit was extremely adversarial and that Fagan and his companies were aggressively defended by DKS. The trial court noted in its reasons for judgment that the litigation was "complex and posed a significant financial threat to Fagan.... DK & S believed it was in the defendants' best interest to mount an aggressive defense, to take the initiative from the plaintiff, and to demonstrate their commitment to opposing Texoma at every turn. Such a strategy, while costly, is neither unusual nor unreasonable in commercial litigation and is frequently effective." Ultimately, DKS was successful in negotiating a settlement in the civil litigation of approximately $125,000.00 payable over seven years without interest, and notably, for which Fagan was not personally liable.
DKS introduced invoices and detailed billing statements itemizing all work performed on behalf of Fagan and his companies in the civil litigation. The $37,111.90 balance due for services rendered in the civil case was substantiated by the testimony of David Treen. The record contains no proof that the amount billed in the civil case was inaccurate or that any credit is due. Other than general allegations that "plaintiff was fully compensated by the several defendants for services rendered in connection with the Texoma civil litigation," the defendants point to no evidence justifying a refusal to pay the final balance owed to DKS in the civil case. After a thorough review of the record, we find that the trial court did not err in the amount of fees awarded to DKS in connection with its representation of Fagan and his companies in the civil litigation.

ATTORNEY FEES FOR PROSECUTION AND COLLECTION OF ATTORNEY FEES
Under La.R.S. 9:2781, the trial court awarded $750.00 in attorney fees to DKS for *1323 its prosecution and collection of fees owed in the criminal case and awarded $9,500.00[3] in attorney fees to DKS for its prosecution and collection of fees owed in the civil case. Pursuant to La.R.S. 9:2781(A), when any person fails to pay an open account within fifteen days after receipt of written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. On appeal, the defendants argue that these attorney fee awards are excessive and not supported by the record.
The trial court is vested with great discretion in arriving at an award of attorney fees. The exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983); Montet v. Lyles, 93-1724 (La.App. 1st Cir. 6/24/94), 638 So.2d 727, 731, writ denied, 94-1985 (La. 11/18/94), 646 So.2d 377. Among the factors to be considered in making an award of attorney fees are: (1) the ultimate result obtained, (2) the responsibility incurred, (3) the importance of the litigation, (4) the amount involved, (5) the extent and character of the labor performed, (6) the legal knowledge, attainment and skill of the attorney, (7) the number of appearances made, (8) the intricacies of the facts and law involved, (9) the diligence and skill of counsel, (10) the court's own knowledge, and (11) the ability of the party liable to pay. Julian Cohen Jeweler v. Succession of Jumonville, 506 So.2d 535, 541 (La.App. 1st Cir.), writ denied, 511 So.2d 1155 (La.1987).
In this case, DKS's pursuit of Fagan and his companies for the recovery of outstanding attorney fees required the production of extensive documentation to establish the amount and quality of work involved in the representation of the parties in the criminal and civil cases. It also required preparation for and participation in a two-day trial. Further, the trial court was in a better position than this court to assess the legal effort required to prove DKS's claims against the defendants. We find no abuse of discretion in the trial court's award of attorney fees in this case.

DECREE
For the foregoing reasons, the judgment of the trial court in docket number 68641, in favor of DKS and against Ralph Fagan, for a principal sum of $2,826.24 plus $750.00 in attorney fees and legal interest, is AFFIRMED. Further, the judgment of the trial court in docket number 65998, in favor of DKS and against Ralph Fagan, Fagan Enterprises, Inc., and Toddell Enterprises, Inc., in solido, for a principal sum of $37,111.90 plus $9,500.00 in attorney fees and legal interest, is AFFIRMED.
NOTES
[1] The law firm of Fulbright & Jaworski of Houston, Texas was retained by DKS as local counsel in the civil case and was initially a plaintiff in these proceedings to collect legal fees; however, Fulbright & Jaworski dismissed its claim without prejudice, and the amount of the demand was reduced from $40,547.72 to $37,111.90.
[2] The original petition named Ralph Fagan, Fagan Enterprises, Inc., Toddell Enterprises, Inc., Fagan Boat Services, Inc., Fagan Boat Services, Inc., Futuristic Boats, Inc., and Kim Susan, Inc. as defendants. At trial, DKS dismissed its claim against Fagan Boat Services, Inc., Futuristic Boat Services, Inc., and Kim Susan, Inc. without prejudice. These defendants were protected by the automatic stay provisions of the Bankruptcy Code. Accordingly, the remaining defendants are Ralph Fagan, Fagan Enterprises, Inc., and Toddell Enterprises, Inc.
[3] In its reasons for judgment dated August 10, 1994, the trial court stated that DKS was entitled to an attorney fee award of $9,250.00 in connection with its representation of Fagan and his companies in the civil litigation. However, in the judgment dated August 10, 1994, the actual amount of the award is $9,500.00.