hLANDRIEU, Judge.
Plaintiff law firm, Leake & Andersson, L.L.P., filed suit on an open account against its former chent, Margaret Raziano, and Os-kar A. Loo-Hernandez. After a trial on the merits conducted on March 11,1997, the trial court ruled in favor of the law firm and against Raziano and Loo-Hernandez in the amount of $4,000.00, plus interest and costs. Raziano and Loo-Hernandez appeal.
In September of 1994, Raziano became aware of her former husband’s interest in the succession of his deceased parents and *925 sought enforcement of a 1987 judgment against her former husband for unpaid child support in the amount of $10,226.39, plus any interest. On the recommendation of Loo-Hernandez, Raziano engaged Leake & An-dersson to represent her. Loo-Hernandez was a family Mend of Raziano and later became her son-in-law. At the time, Leake & Andersson had represented Loo-Hernandez and his company, I.C.C.I., for several years. I.C.C.I. became defunct in November of 1994.
When Leake & Andersson requested payment of a $1,000.00 retainer, Raziano informed the law firm that she was concerned about costs. Although the retainer was not paid, the firm commenced representation of Raziano. Leake & |2Andersson believed that Loo-Hernandez had personally guaranteed payment of any and all costs associated with Raziano’s enforcement action. Eventually, her account incurred bills totalling $9,668.20, but the firm was unsuccessful in obtaining enforcement of the child support judgment.[1] In November of 1995, Leake & Andersson advised Raziano that an appeal would cost $5,000.00. Noting that neither she nor Loo-Hernandez had paid anything on the account, the firm informed Raziano that it was withdrawing as her counsel and not pursuing an appeal on her behalf.
In January of 1996, Raziano informed the law firm that she might be able to pay her legal bills with all or part of her tax refund, for which she would file in February of 1996. When the firm did not hear from Raziano, it filed suit on the open account on March 6, 1996.
At trial, Guy Perrier, the attorney handling Raziano’s ease, testified that he had represented Loo-Hernandez in a number of matters. He stated that, when Raziano indicated she had no money to pay the retainer, he informed Loo-Hernandez of the firm’s reluctance to take her case without the retainer. Perrier testified that Loo-Hernandez agreed to pay all costs, “whatever it takes.” According to Perrier, two letters written by him to Raziano, and copied to Loo-Hernandez, confirmed the existence of Loo-Hernandez’s obligation to pay Raziano’s retainer and future legal fees.
Loo-Hernandez testified that he had no memory of promising Perrier that he would pay any part of Raziano’s litigation costs. He also had no memory of receiving the letters sent by the firm regarding Raziano’s legal bills, noting that he received many letters and bills from the firm for I.C.C.I. He acknowledged that the firm may have been under the impression that he had agreed to pay Raziano’s Rretainer. He testified, however, that, in June of 1995, he signed, and eventually paid, two promissory notes to Leake & Andersson for all legal services provided to him. At the time, Perrier assured him that the notes, totalling $9,000.00, satisfied any and all outstanding amounts owed by him to the firm.
Raziano testified that she informed Perrier in several telephone conversations and by two letters, one of which was admitted in evidence and dated January, 1996, that Loo-Hernandez was not responsible for any part of her bill.
In its Reasons for Judgment, the trial court found that Loo-Hernandez was “a guarantor of Ms. Raziano’s obligation” to the law firm.
Raziano and Loo-Hernandez first assert the trial court erred in finding that Loo-Hernandez was responsible for any of Razi-ano’s debt to the law firm. Alternatively, they assert that, if the court finds Loo-Hernandez was obligated to pay Raziano’s debt, the promissory note fulfilled by Loo-Hernandez extinguished Raziano’s debt.
La. Civ.Code art. 3035 defines a suretyship as an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. Suretyship must be express and in writing. La. Civ.Code art. 3038. Suretyship is established upon receipt by the creditor of the writing evidencing the surety’s obligation. La. Civ.Code art. 3039.
Initially, we note that Loo-Hernandez did not become Raziano’s surety pursuant to La. Civ.Code art. 3035, as no agreement to *926 do so was ever reduced to writing. See La. Civ.Code art. 3038. Instead, Leake & An-dersson characterizes Loo-Hernandez’s agreement as a “promise to pay” Raziano’s debt. Raziano and Loo-Hernandez argue that the trial court erred in admitting parol evidence to prove the existence of the promise to pay and that the remaining evidence fails to establish any such promise.
|4Under La. Civ.Code art. 1832, when the law requires a contract to be in written form, the contract may not be proved by testimony or presumption, unless the written instrument has been destroyed, lost, or stolen. Here, there is no allegation by plaintiff that a written agreement ever existed. Additionally, La. Civ.Code art. 1847 provides in pertinent part that “[pjarol evidence is inadmissible to establish ... a promise to pay the debt of a third person.” There is an exception to this rule, however, as we explained in Marmedic, Inc. v. Int’l Ship Management & Agency Services, Inc., 425 So.2d 878 (La.App. 4th Cir.1983):
... If the agreement to pay is not made primarily to answer for another but is impelled from the pecuniary or business motives of the promissor, then the promise to pay is, in effect, a new and independent agreement and parol evidence is admissible to establish same.
We must determine whether defendant’s promise to pay constituted a primary or collateral obligation. The decisive question which must be answered is: to whom was the credit extended? In order to determine to whom the credit was extended we must examine the relationship of the parties and the motive and pecuniary interest of the party making the promise. If credit was extended to the defendant, then parol evidence is admissible to prove the defendant’s promise to pay, because the promise to pay constituted a primary obligation.
... The question of whether the obligation is primary or collateral is factual. As such, the finding of the trial court will not be disturbed in the absence of manifest error.
425 So.2d at 880 (citations omitted).
In this case, even if a promise to pay Raziano’s debt had been orally made by Loo-Hernandez, this obligation was most certainly collateral rather than primary. There is no evidence that Loo-Hernandez was ever directly extended credit with regard to the Raziano litigation.[2] The invoices were submitted toJj>Raziano in Raziano’s name. Notably, in a letter dated February 21, 1995, the law firm indicated to Loo-Hernandez that a copy of a letter sent to Raziano the same day was enclosed and requested that Loo-Hernandez pay some or all of Raziano’s outstanding debt. The letter to Raziano informed her that Loo-Hernandez was no longer guaranteeing payment of her legal bills and that the firm would withdraw from the case. However, the firm’s invoice for February of 1995 shows a communication entitled “Letter/Misc. — Loo-Hernandez” on February 15 and February 16. Thereafter, no other communications with Loo-Hernandez are noted on the invoices. The only other letter in the record which was carbon-copied to Loo-Hernandez is the letter of November 21,1995, to Raziano informing her that the law firm declined to continue to represent her. Thus, nothing in the record establishes that the law firm ever personally or directly billed Loo-Hernandez for any part of Raziano’s litigation costs.
Furthermore, other than the concern of a family friend or relative, Loo-Hernandez had no pecuniary or business interest in assuming Raziano’s debt. Neither Loo-Hernandez nor his company would have benefit-ted in any manner from Raziano’s litigation had it been successful. Leake & Andersson assert that Loo-Hernandez had a pecuniary interest in not having to advance money to another firm on Raziano’s behalf and, therefore, he could take advantage of his ongoing credit arrangement with the firm. Other than a convenience to Loo-Hernandez, we do not believe that this arrangement would have created a “pecuniary interest” in the Raziano *927 litigation matter sufficient to make him the primary obligor for Raziano’s debt. For example, in Deutsch, Kerrigan & Stiles v. Fagan, 95-0811, 95-0812 (La.App. 1 Cir. 12/15/95), 665 So.2d 1316, unit denied, 96-0194 (La.3/15/96), 669 So.2d 418, Fagan allegedly promised the law firm that he would |6pay for the legal services debt of his companies. There, the court reasoned that as the chief executive officer and majority shareholder of all the corporations, Fagan had an “obvious” and substantial pecuniary interest in obtaining legal services to defend himself and his companies against a potential liability exposure of three million dollars. Here, there is no such business motive behind Loo-Hemandez’s alleged promise to pay the legal bills of a friend.
There is additional support for a finding that Loo-Hernandez was not the primary obligor for Raziano’s debt. Loo-Hernandez and I.C.C.I. ended their relationship with Leake & Andersson in November of 1994 when I.C.C.I. ceased doing business. In June of 1995, after unsuccessful efforts by the firm to get Loo-Hernandez to pay his and the company’s outstanding legal bills, the firm had him sign two promissory notes referencing the proceeds from the future refinancing of the mortgage of his home. As to Raziano, by letter dated February 21, 1995, the firm informed her that Loo-Hernandez would no longer guarantee payment of her legal bills and that, as a result, the firm would be filing a motion to withdraw as her counsel of record. On July 6, 1995, the law firm obtained an assignment of all of Razi-ano’s interest in the litigation. Notwithstanding these developments, Leake & An-dersson continued to represent Raziano on a credit basis through October of 1995. The law firm pulled the plug on further litigation efforts in November of 1995, when the estimated expense of an appeal threatened to increase the total cost of the litigation up to or beyond the amount of any foreseeable award.
In sum, Leake & Andersson failed to prove that Loo-Hemandez’s alleged promise to pay Raziano’s litigation expenses constituted a primary obligation and that Loo-Hernandez was a guarantor of Raziano’s debt.
bFor these reasons, the trial court’s judgment is reversed in part and affirmed in part. The judgment against Loo-Hernandez is reversed. The judgment against Raziano is affirmed.

REVERSED IN PART; AFFIRMED IN PART.

. Leake & Andersson later reduced the amount to $4,000.00.

. Indeed, if the firm had actually extended credit to Loo-Hernandez for assuming Raziano’s obligation, then Loo-Hernandez’s debts to the firm, which were extinguished by the satisfaction of the promissory notes, arguably encompassed the Raziano account as well.