STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1405

DONALD T. BROWN, DDS

VERSUS

DOUGLAS D. McGINITY, McGINITY LAW FIRM, LLC
AND HANNAH CHOKR

*Judgment Rendered:* JUL 1 4 2022

********

Appealed from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 2016-13910

The Honorable Ellen M. Creel, Judge Presiding

********

| | |
|---|---|
| Thomas H. Huval<br>Stefini W. Salles<br>Covington, Louisiana<br>and<br>Neil H. Mixon<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Donald T. Brown, DDS |
| Kevin R. Tully<br>H. Carter Marshall<br>New Orleans, Louisiana | Counsel for Defendant/Appellants<br>Douglas D. McGinity and McGinity Law<br>Firm, LLC |

********

BEFORE: WHIPPLE, C.J., LANIER, AND HESTER, JJ.

**LANIER, J.**

Defendants, Douglas D. McGinity and McGinity Law Firm, LLC (hereinafter sometimes collectively referred to as "McGinity"), seek this court's review of the district court's December 30, 2020 judgment granting summary judgment in favor of plaintiff, Donald T. Brown, DDS. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Zienab Chokr, a/k/a Zara Chokr, was injured in an automobile accident on August 14, 2015. Zara was a minor at the time of the accident. Subsequent to the accident, Zara's mother, Nisrine Chokr, retained Douglas D. McGinity and the McGinity Law Firm, LLC to represent Zara in connection with her claim for personal injuries. According to the record, Mr. McGinity contacted Dr. Brown in December 2015 regarding potential treatment for Zara for a TMJ (temporal mandibular joint) injury. Zara was initially evaluated by Dr. Brown on December 10, 2015, at which time her mother was provided with a Predetermination Estimate of Costs for Treating TMJ Dysfunction ("the estimate"). The estimate set forth in detail the various phases of potential treatment and the estimated costs associated with same. Ms. Chokr signed the estimate on December 10, 2015. On December 21, 2015, Dr. Brown's office staff spoke with Mr. McGinity regarding the initial evaluation of Zara and faxed the estimate to Mr. McGinity's office.

The estimate provided that the cost of "PHASE I - TMJ THERAPY" would be approximately $5,000.00 to $10,300.00 and would include diagnostic studies; a therapeutic upper and/or lower splint; physical modalities such as ultrasound treatments, moist heat, and infrared therapy; and regular office visits for evaluation and adjustment of the splint. The estimate indicated that the total cost of Phase I "varies with each patient" and that "[t]he more severe the condition, the longer it will take to alleviate the discomfort and restore normal function." It further

2

explained what the TMJ Diagnostic Study entailed and that the average cost of the study is $3,359.00. With regard to payment, the estimate clearly specified that a deferred payment plan was available, with an initial payment of $1,680.00 to begin treatment and monthly payments of $237.00 thereafter until the balance was paid in full. The estimate provided further that a monthly statement would be provided showing the balance due on the account. According to the record, monthly statements were sent to McGinity in 2016 for the months of April-August.

On March 9, 2016, Mr. McGinity signed a Payment Agreement ("payment agreement") with Dr. Brown's office in which Mr. McGinity, as the responsible party, agreed to use the deferred payment plan, with the initial payment of $1,680.00 being due by March 21, 2016, followed by the monthly payments of $237.00 beginning on April 21, 2016. On that same date, Mr. McGinity also signed a Medical Reports & Doctor's Lien ("lien agreement"), in which he acknowledged that he was to "withhold such sums from any settlement, judgment, or verdict, as may be necessary to adequately protect" Dr. Brown.

Ms. Chokr signed the same lien agreement on March 21, 2016. Ms. Chokr authorized Mr. McGinity to pay Dr. Brown directly from any settlement that may be paid as a result of Zara's injuries. However, Ms. Chokr also acknowledged that she was personally and fully responsible to Dr. Brown for all of the invoices submitted by him for medical and dental services rendered to Zara and that payment to Dr. Brown was not contingent upon any settlement that Zara may eventually receive. Moreover, by signing the lien agreement, Ms. Chokr agreed that no distribution of any settlement proceeds could be made to her or Zara until Mr. McGinity had confirmed, in writing, that Dr. Brown's charges have been paid in full.

3

On March 10, 2016, Mr. McGinity's office paid the $1,680.00 initial payment as set forth in the estimate and the payment agreement. Zara's second visit with Dr. Brown was on March 21, 2016, which included a detailed series of x-rays and other computer diagnostics; on March 30, 2016, Zara received her mandibular splint. One monthly payment in the amount of $237.00 was made on Zara's account for April 2016.

On April 4, 2016, Dr. Brown provided Mr. McGinity with a detailed expert report outlining his findings and opinions regarding his treatment of Zara. Dr. Brown continued to treat Zara with follow-up visits on April 4, 2016, April 11, 2016, April 28, 2016, and May 17, 2016. According to Dr. Brown's records, the charges for his treatment of Zara totaled $5,694.00. No further payments were made by Mr. McGinity or by Ms. Chokr after the $237.00 payment made in April 2016, leaving a remaining balance on Zara's account of $3,777.00.

According to Dr. Brown, he learned in late July 2016 that Mr. McGinity had settled Zara's claims for personal injuries arising out of the August 14, 2015 accident. Dr. Brown alleged that he was never advised of the settlement by either Mr. McGinity or Ms. Chokr. Written demand for payment was made on Mr. McGinity on August 4, 2016, and on Ms. Chokr on August 24, 2016.

After several unsuccessful attempts to collect the unpaid balance from Mr. McGinity, Dr. Brown filed suit on open account pursuant to La. R.S. 9:2781 naming as defendants Mr. McGinity, McGinity Law Firm, LLC, and Ms. Chokr. Dr. Brown sought to recover the balance due on the account, $3,777.00, plus reasonable attorney fees, court costs, and interest.[1]

---

[1] Dr. Brown subsequently filed a first supplemental and amending petition, further outlining his claims against McGinity and Ms. Chokr.

Mr. McGinity and Ms. Chokr both answered Dr. Brown's petitions, generally denying the allegations set forth by Dr. Brown. Ms. Chokr further reconvened against Dr. Brown, seeking damages for medical malpractice in connection with his treatment of Zara.[2]

Thereafter, Dr. Brown filed a motion for summary judgment asserting that there was no genuine issue as to any material fact in dispute and that he was entitled to summary judgment for the contract amount due. Dr. Brown argued that there was no dispute that he provided medical treatment to Zara; that the treatment was authorized by Ms. Chokr; that payment of the charges was guaranteed by McGinity and Ms. Chokr; that the amount billed was on the low end of the estimated fees; and that McGinity and Ms. Chokr had signed documents indicating their agreement that they were responsible for the payment of the charges incurred for Zara's treatment and that funds received from any settlement would not be distributed until Dr. Brown was paid in full. McGinity opposed Dr. Brown's motion for summary judgment. Citing La. Civ. Code art. 1973, McGinity argued that any contract with Dr. Brown was too indeterminate and, thus, unenforceable because it is without cause. Alternatively, McGinity urged that Dr. Brown's fees were unreasonable.[3]

Following a hearing on November 5, 2020, the district court granted Dr. Brown's motion for summary judgment, rendering judgment in favor of Dr. Brown and against Ms. Chokr, Mr. McGinity, and McGinity Law Firm, LLC, jointly, severally, and *in solido* in the amount of $3,777.00, plus court costs, interest, and

---

[2] As acknowledged by counsel at oral arguments before this court, Ms. Chokr's medical malpractice claim has been voluntarily dismissed. Mr. McGinity also filed a reconventional demand against Dr. Brown for defamation, which was dismissed without prejudice on motion of Mr. McGinity.

[3] McGinity raised these same issues in a cross motion for summary judgment, which was denied by the district court. We note that McGinity was granted an appeal from the district court's denial of its motion for summary judgment, which is the subject of a related appeal also decided this date, **Brown v. McGinity**, 2021-1406 (La. App. 1 Cir. __/__/22) (unpublished).

5

reasonable attorney fees.[4] The district court signed a judgment in accordance with its findings on December 30, 2020, certifying the judgment as final for purposes of appeal pursuant to La. Code Civ. P. art. 1915. Ms. Chokr and McGinity each filed a timely motion for new trial, which were both denied by the district court. This appeal by McGinity followed, wherein the following assignments of error were raised:

> 1. The District Court erred in granting appellee/plaintiff Dr. Brown's motion for summary judgment because the documents upon which Dr. Brown relied, including his *Predetermination Estimate of Costs for Treating TMJ Dysfunction*—setting for a range of cost estimate for six to eighteen months of Phase I TMJ treatment—was too indeterminate to create an enforceable contract with McGinity or to require McGinity to pay Dr. Brown whatever he decided to charge Zara Chokr for each of her six visits over Zara's two, not six to eighteen, months of orthodontic treatment.

> 2. The District Court erred in granting appellee/plaintiff Dr. Brown's motion for summary judgment based upon the Court's observation that the balance Dr. Brown sought to recover by summary judgment—$3,777.00 out of a bill totaling $5,694.00—fell "very much within the estimate of range of services" for which McGinity agreed to guarantee payment. Dr. Brown's claimed $3,777.00 balance does not evidence the fee Dr. Brown invoiced or claimed was reasonable, that is, what was customary in the community for similar treatments. ... No evidence was presented on what fees were customarily charged for the orthodontic services Dr. Brown provided Zara Chokr during her two months of treatment by Dr. Brown in only six appointments.

> 3. The District Court erred granting Dr. Brown summary judgment, awarding Dr. Brown the fee he claimed due while at the same time noting in the Court's Reasons for Judgment that "there exist genuine issues of material fact as to whether or not the charges of the dentist involved are reasonable."

## SUMMARY JUDGMENT

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). In reviewing a

---

[4] We note that because Ms. Chokr has not appealed the summary judgment rendered in favor of Dr. Brown, the December 30, 2020 judgment is final as it pertains to Ms. Chokr.

trial court's ruling on a motion for summary judgment, appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1 Cir. 7/18/18), 255 So.3d 16, 22, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194.

The Code of Civil Procedure places the initial burden of proof on the party filing the motion for summary judgment, here Dr. Brown. See La. Code Civ. P. art. 966(D)(1). Once the motion for summary judgment has been made and properly supported,[5] the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). If the non-moving party fails to produce sufficient factual support in its opposition that proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. See **Babin v. Winn-Dixie Louisiana, Inc.**, 2000-0078 (La. 6/30/00), 764 So.2d 37, 40 (per curiam); **Jenkins v. Hernandez**, 2019-0874 (La. App. 1 Cir. 6/3/20), 305 So.3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Janney v. Pearce**, 2009-2103 (La. App. 1 Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So.3d 1078. Because it is the applicable substantive law

---

[5] Generally, if the moving party will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover must only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. Code Civ. P. art. 966(D)(1); see also La. Code Civ. P. art. 966, Comments—2015, Comment (j). Here, however, Dr. Brown bears the burden of proof at trial on his suit on open account.

that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pacific Consumer Operations, LLC**, 255 So.3d at 22.

Louisiana Revised Statutes 9:2781(D) defines an open account as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." An open account necessarily involves an underlying agreement between the parties on which the debt is based. **Advanced Leveling & Concrete Solutions v. Lathan Company, Inc.**, 2020-0040 (La. App. 1 Cir. 12/10/20), 316 So.3d 509, 513. If a debtor "fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed," the debtor "shall be liable to the claimant for reasonable attorney fees ... when judgment on the claim is rendered in favor of the claimant." La. R.S. 9:2781(A).

In an action on an open account, a plaintiff bears the burden of proving his demand by a preponderance of the evidence. **Action Oilfield Services, Inc. v. Energy Management Company**, 2018-1146 (La. App. 1 Cir. 4/17/19), 276 So.3d 538, 542. The plaintiff must first prove the account by showing that the record of the account was kept in the course of business and by introducing supporting testimony regarding its accuracy. Once the plaintiff has established a prima facie case, the burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits. **Louisiana Eggs, Inc. v. Gunter Farms, Inc.**, 2001-0932 (La. App. 1 Cir. 4/2/03), 844 So.2d 400, 402. The amount due on an account is a question of fact that may not be disturbed absent manifest error. **Deutsch, Kerrigan & Stiles v. Fagan**, 95-0811 (La. App. 1 Cir. 12/15/95), 665 So.2d 1316, 1320, writ denied, 96-0194 (La. 3/15/96), 669 So.2d 418.

8

The requirements for a valid contract are: (1) capacity; (2) consent; (3) a lawful cause; and (4) a valid object. See La. Civ. Code arts. 1918, 1927, 1966, 1971; **Hoskins v. State Through Division of Administration, Office of Community Development**, 2018-1089 (La. App. 1 Cir. 2/25/19), 273 So.3d 323, 328. According to the Civil Code, "The quantity of a contractual object may be undetermined, provided it is determinable." La. Civ. Code art. 1973.

Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. See La. Civ. Code art. 1983; **Waterworks District No. 1 of DeSoto Parish v. Louisiana Department of Public Safety and Corrections**, 2016-0744 (La. App. 1 Cir. 2/17/17), 214 So.3d 1, 5, writ denied, 2017-0470 (La. 5/12/17), 219 So.3d 1103. Interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. Thus, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. **Hampton v. Hampton, Inc.**, 97-1779 (La. App. 1 Cir. 6/29/98), 713 So.2d 1185, 1189. Moreover, the parties are free to contract for any object that is lawful. La. Civ. Code art.1971. "Freedom of contract" signifies that parties to an agreement have the right and power to fashion their own bargains. **Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc.**, 96-1716 (La. 7/1/97), 696 So.2d 1373, 1380; **James Const. Group, L.L.C. v. State ex rel. Dept. of Transp. and Development**, 2007-0225 (La. App. 1 Cir. 11/2/07), 977 So.2d 989, 998.

In support of his motion for summary judgment, Dr. Brown introduced his affidavit with several exhibits attached thereto to show that the outstanding balance connected with his treatment of Zara constituted an open account within the meaning of La. R.S. 9:2781. Dr. Brown submitted all of the documents signed by McGinity and Ms. Chokr, clearly evidencing their intent to guarantee payment of

9

Dr. Brown's fees associated with his treatment of Zara. Dr. Brown introduced copies of the ledger for Zara's account, which detailed all charges and payments to Zara's account during the time he treated her, as well as dates of each transaction.

As further support for each charge on the account, Dr. Brown offered his 2014 Schedule of Fees, as well as copies of claim forms for each office visit. The office visit claim forms provided a breakdown of exactly what the charges were for each day Zara was treated.[6] Dr. Brown also submitted copies of the monthly statements that were sent to McGinity regarding Zara's account, as well as the demand letters that he sent to McGinity and Ms. Chokr on August 4, 2016, and August 24, 2016, respectively.

Finally, Dr. Brown offered a copy of his April 4, 2016, expert report, and the affidavits of two of his orthodontist assistants. Both of Dr. Brown's orthodontist assistants attested that they had spoken with Mr. McGinity multiple times after the estimate was faxed to him and that they answered any questions Mr. McGinity had regarding Dr. Brown's payment policy. They both added that at no time did either Mr. McGinity or Ms. Chokr voice any objection to Dr. Brown's fees or to his treatment of Zara.

In opposition to Dr. Brown's motion for summary judgment, McGinity submitted the following exhibits: (1) Dr. Brown's medical records concerning his treatment of Zara, which, in addition to documents already introduced by Dr. Brown, included handwritten office notes from the days he treated Zara; (2) excerpts of Dr. Brown's deposition; (3) Dr. Brown's answers to some discovery requests, which included a detailed account of the services he provided to Zara at each office visit; (4) the affidavit of Justin Ramsey, D.D.S., who opined that Dr. Brown deviated from the standard of care in his treatment of Zara by failing to

---

[6] Dr. Brown indicated that the claim forms included diagnostic codes for each visit, which are used for filing with insurance companies. He added that these forms are generated for every patient, regardless of their insurance status.

10

present the fees in a transparent and understandable way, failing to discuss/inform all possible treatment options, and failing to obtain the proper "informed" consent; (5) the affidavit of Ms. Chokr, wherein she attested that Dr. Brown had deceived her and Zara regarding the medical treatment available for Zara's TMJ injury; and (6) excerpts of Dr. Larry McMillen's deposition.[7]

After *de novo* review, we find that Dr. Brown satisfied his initial burden on the motion for summary judgment. He offered prima facie evidence of the amount due and owing on the account, $3,777.00, in connection with his treatment of Zara. According to the record, Dr. Brown treated Zara over the course of six office visits. Zara's treatment began with a lengthy office visit on March 21, 2016, for a "complete diagnostic records examination," for which Zara's account was billed $3,359.00. As noted by the district court, Dr. Brown's estimate for the diagnostic testing and the amount actually charged to Zara's account were identical. Also included in Zara's treatment plan was an orthotic splint that was designed to help with the TMJ injury, for which Zara's account was billed $1,614.00. These two charges account for $4,973.00 of the total $5,694.00 that Dr. Brown charged for his treatment of Zara.

The remaining amount, $721.00, represents charges that accumulated over the office visits that are detailed on the claim forms submitted into evidence by Dr. Brown.[8] The record is clear that the only payments made to Dr. Brown on Zara's

---

[7] According to the record, Dr. McMillen was retained by Dr. Brown in connection with the medical malpractice case that had been filed against him.

[8] The record reflects a total of five visits that account for the $721.00 in charges on Zara's account. On March 30, 2016, there is a charge of $214.00 for "Anodyne, Infrared Therapy" and "Neuromuscular, Re-education (MFT)." Following a "Limited" office visit on April 4, 2016, Zara's account was charged $88.00. On April 11, 2016, Zara's account was charged $243.00 for an "Extended" office visit that included "Range of Motion." Finally, on both April 28, 2016, and May 17, 2016, Zara had an "Orthotic Check-Up" for which her account was charged $88.00 per visit.

account were the initial down payment of $1,680.00 and one monthly payment of $237.00, leaving a balance due of $3,777.00.[9]

Dr. Brown also submitted copies of the estimate, payment agreement, and lien agreement that were signed by the parties. These documents clearly provide the terms and conditions associated with his treatment of Zara, including the parties who would bear responsibility for payment to Dr. Brown for his services, *i.e.*, McGinity and Ms. Chokr. The documents further provided that prior to the distribution of any settlement proceeds, McGinity would confirm, in writing, that Dr. Brown's charges had been paid in full.

Thus, the burden of proof on the motion for summary judgment then shifted to McGinity. McGinity argued that the estimate, payment agreement, and lien agreement were unclear and ambiguous. McGinity further alleged that any obligation that may arise from these documents was too indeterminate to satisfy Article 1973. Thus, McGinity maintained, the obligation was unenforceable because it was without cause. Alternatively, McGinity claimed that even if a valid contract is found to have existed between the parties, the fees charged by Dr. Brown were not reasonable.

The cases relied on by McGinity in support of the argument that the agreement with Dr. Brown was too indeterminate to be enforceable are all easily distinguished from the case before us now. In **Louisiana Television Broadcasting, L.L.C. v. Jay Inzenga & Jay'S Furniture Home Store, L.L.C.,** 2019-0430 (La. App. 1 Cir. 11/15/19), 2019 WL 6045223 (unpublished), plaintiff

---

[9] We note that Dr. Brown's ledger for Zara's account also reflects a charge and payment in the amount of $550.00 dated March 31, 2016, for a "Diagnostic Report." However, this does not appear to be a payment towards the balance due and owing for the services rendered by Dr. Brown. The $550.00 charge does not appear on any of the aforementioned claim forms submitted into evidence by Dr. Brown, which provided a breakdown of the charges for each day Zara was treated. Thus, although not clear from the record, it appears that the $550.00 payment was for the April 4, 2016 expert report that was prepared by Dr. Brown at McGinity's request, not to be confused with the March 21, 2016 "diagnostic" testing and records appointment, for which Zara's account was billed $3,359.00.

12

filed suit seeking to enforce an agreement to pay allegedly contained in several text messages sent by defendant to plaintiff. On appeal, this court concluded that although the parties may have understood that an outstanding balance existed, the offer to "give [plaintiff] something toward the old bill;" to "give [plaintiff] something in the morning that we can live with in good faith;" or to "send [plaintiff] something," each individually, and all collectively, failed to establish the amount of defendant's outstanding advertising balance. As such, there was an undeterminable sum, and any alleged agreement was without cause. **Louisiana Television Broadcasting, L.L.C.**, 2019 WL 6045223 at *7.

In **Wegmann v. Tramontin**, 2015-0561 (La. App. 4 Cir. 1/13/16), 186 So.3d 236, writ denied, 2016-0276 (La. 4/4/16), 190 So.3d 1209, the petition alleged that Mr. Tramontin agreed to pay Ms. Wegmann an amount within the range of $3,000,000.00 to $5,000,000.00 and that residual amounts after "the first portion of the $3,000,000.00" was tendered upon the sale of Ms. Wegmann's house, would be payable on an "as needed basis." **Wegmann**, 186 So.3d at 238. The court found there was no way to determine where in this $3,000,000.00 to $5,000,000.00 range the payments would fall, nor was it clear what constituted an "as needed basis." Thus, the court concluded the alleged contract was for an undeterminable sum and therefore unenforceable. **Wegmann**, 186 So.3d at 240.

In **TAC Amusement Co. v. Henry**, 238 So.2d 398 (La. App. 4 Cir. 1970), the plaintiff agreed to "install, operate and maintain on said premises one or more coin operated music devices, and/or one or more legal coin operated amusement devices with the number and type of such being within your (plaintiff's) sole discretion and at your option." **TAC Amusement Co.**, 238 So.2d at 399. The court held that "both the quality and the quantity of the object of plaintiff's obligation was ... too indeterminate to meet the requirement of [La. Civ. Code art.]

13

1886 [(1870) now Article 1973], and therefore defendant's obligation was unenforceable because without cause." **TAC Amusement Co.,** 238 So.2d at 400.

With regard to McGinity's argument that Dr. Brown failed to prove that his fees were reasonable, we note that in addition to Dr. Brown's testimony that all of the charges on Zara's account were reasonable and consistent with what he had been charging for TMJ treatment since 2014, Dr. Brown submitted his 2014 Schedule of Fees showing that all of the fees charged to Zara's account were consistent with the amounts set forth therein. McGinity failed to submit any evidence to contravene the reasonableness of Dr. Brown's fees. McGinity relies heavily on the deposition testimony of Dr. McMillen to support its argument that Dr. Brown's fees were unreasonable. However, we note that when asked his opinion on whether Dr. Brown's fees charged to Zara were reasonable for the treatment he rendered and the results he obtained, Dr. McMillen replied, "Yeah, I wouldn't know. I just know that it was documented exactly what he charged for."

Following our exhaustive review of the record before us, we conclude that McGinity failed to come forward with any evidence establishing that there is a genuine issue of material fact. As previously noted, in the instant case, both the object of the contract and the amount due and owing to Dr. Brown on Zara's account is easily determined. Both Mr. McGinity and Ms. Chokr signed documents, including the payment agreement and the lien agreement, indicating their understanding that they were responsible for the charges associated with Dr. Brown's treatment of Zara for TMJ. Dr. Brown submitted detailed records regarding said treatment, including the diagnostic codes for each visit. Dr. Brown also introduced, among other things, his rate sheet, the ledger for Zara's account, and the monthly statements and demand letters that were mailed to McGinity. The record clearly establishes the amount due and owing on the account, $3,777.00.

14

Accordingly, we find no error in the district court's ruling granting summary judgment in favor of Dr. Brown.

## DECREE

For the above and foregoing reasons, we affirm the district court's December 30, 2020 judgment granting summary judgment in favor of Donald T. Brown, DDS and against Nisrine Chokr, Douglas D. McGinity, and McGinity Law Firm, LLC, jointly, severally, and *in solido* in the amount of $3,777.00, plus court costs, interest, and reasonable attorney fees. We assess all costs associated with this appeal against appellants, Douglas D. McGinity, and McGinity Law Firm, LLC.

**AFFIRMED.**