862 So.2d 414 (2003)
WALKER, TOOKE & LYONS, L.L.P., Plaintiff-Appellee,
v.
Douglas SAPP, Defendant-Appellant.
No. 37,966-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 2003.
*416 Douglas Sapp, In Proper Person.
Mayer, Smith & Roberts, L.L.P., by David F. Butterfield, Shreveport, for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
CARAWAY, J.
In this collection suit for legal fees, the trial court awarded judgment on behalf of the law firm for its fees plus the interest stipulated in the parties' contract and attorney's fees for the prosecution of the claim. The defendant makes assignments of error regarding the conduct of the trial and challenges the interest charge as usurious. Finding merit only in his claim of usury, we amend the judgment to exclude the award of interest in advance of the judicial demand, and as amended, the judgment is affirmed.

Facts
In 1997, Douglas Sapp ("Sapp") hired a Shreveport law firm to pursue an alleged employment discrimination claim against his former employer, Entergy Corporation. Sapp entered a contingent fee contract with the firm in which he agreed to pay advanced costs and expenses relating to the representation. In 1998, suit was filed in federal court alleging constructive discharge and race-based harassment. In late 1999, after conducting preliminary discovery, this law firm advised Sapp that it was withdrawing as his counsel of record and that he should find a new attorney. Within a few weeks, Sapp contacted Henry C. Walker's office to schedule an appointment. After the initial consultation, Sapp hired the law firm, Walker, Tooke & Lyons, L.L.P. ("WTL"), to continue the federal court litigation.
Sapp and WTL entered into an letter agreement dated February 25, 1999, detailing how charges for the law firm's legal services would be billed and paid. Sapp agreed to pay for representation on an hourly fee basis plus costs, to be billed monthly. The fee structure set forth in the letter agreement stated that Henry C. Walker's time would be billed at $200/hour, that H. Clay Walker's time would be billed at $100/hour, and that paralegal time would be billed at $50/hour. Further, the letter provided that "[a]n eighteen percent (18%) per annum finance charge accrues on any balance with this firm which is over 30 days old." Finally, the letter acknowledged receipt of Sapp's $5,500 retainer, stating that "[o]ur fees and costs will be deducted as earned, and any excess amount due will be billed to you on a monthly basis as described above." The letter did not contain any provision as to payment for attorney's fees in the event of collection.
During 1999, WTL engaged in further discovery and refined the components of Sapp's claim. An amended complaint alleged constructive discharge, promotion denial based on race, hostile work environment due to racial harassment, and race-based pay disparity. In early June, 1999, WTL conducted depositions of two of Sapp's co-workers, one in Arkansas and one in Monroe. Henry C. Walker testified at trial that by September, 1999, the only claim left that had not been weakened by discovery was the disparate pay issue. Entergy was successful in obtaining a protective order under which its responses to plaintiff's interrogatories were sealed due to their sensitive nature.
In November, 1999, shortly before Entergy responded to Sapp's discovery requests, *417 WTL advised Sapp that he was "behind on keeping abreast of our legal fees," and that Sapp "presently owe[d] ... $6,441.92." He proposed that they meet at WTL's office to resolve any financial problems. The same letter indicated that if adequate proof of Sapp's claims emerged from Entergy's discovery responses, WTL would change its fee arrangement from an hourly basis to a contingent fee basis. However, this never happened because after reviewing these responses, WTL concluded that there was no evidence to support the disparate pay claim.
After Entergy moved for summary judgment in January, 2000, Henry C. Walker met with Sapp to discuss his claim. The content of the meeting was memorialized in WTL's letter to Sapp dated January 31, 2000, stating the following:
At the end of our Sunday meeting, you acknowledged that the pay disparity proof wasn't there, and agreed that I would advise opposing counsel and the Court that we would not be responding to the summary judgment motion, and that the case would be dismissed by the Court sometime thereafter. I have now advised Entergy's counsel and the Judge's clerk that we will not be opposing the Summary Judgment motion, and we should expect dismissal soon.
The law suit was dismissed with prejudice on February 24, 2000.
In April, 2001, WTL mailed a demand letter to Sapp requesting payment on the remaining outstanding balance of $10,978.98[1] in legal fees and finance charges, pursuant to the contract.[2] When Sapp failed to pay off his account, WTL filed the instant suit to collect the debt. The petition prayed for judgment on the contract in the amount of $10,978.98, plus interest, attorney's fees, and costs. Sapp answered with a general denial,[3] and reconvened alleging professional negligence, deceptive trade practices, and a civil conspiracy on behalf of Henry C. Walker and H. Clay Walker to defraud him by excessive and fraudulent billings. Sapp claimed that WTL's breach of contract constituted a waiver of its right to collect further compensation. The trial court deferred ruling on WTL's peremptory exception of prescription and motion for summary judgment until trial on the merits.
The trial took place over two days. At the close of trial, the trial court ruled from the bench that WTL proved that Sapp owed $10,978.98 under the fee contract. Additionally, the court awarded WTL "eighteen percent per annum simple interest through the date of judicial demand" and legal interest thereafter on the amount of the judgment. In its bench ruling, the trial court found that Sapp's claims as set forth in his reconventional demand had all prescribed. The trial court took the matter of WTL's attorney's fees for the collection suit under advisement, and subsequently rendered a second judgment for $5,000 plus $400 advanced court costs and expenses. It is from these two judgments that Sapp appeals.

Discussion
We first note that Sapp does not raise an issue of the overall reasonableness of the attorney's fees, which are always subject to inquiry by virtue of the inherent power of the courts to regulate *418 the practice of law. City of Baton Rouge v. Stauffer Chemical Co., 500 So.2d 397 (La.1987); Chittenden v. State Farm Mutual Automobile Ins. Co., 00-414 (La.5/15/01), 788 So.2d 1140. Instead, in his first assignment of error, appellant argues that "most of the fees sued upon arose from the calculation of an illegal interest rate." Specifically, he asserts usury and that the interest awarded by the trial court was improperly compounded. We agree.
With respect to the practice of attorneys charging their clients interest, it is permitted provided the client agrees in writing to such a charge, and the interest rate is lawful and reasonable. Chittenden, supra. Interest is a charge, or fee, commonly expressed as an annual percentage rate, paid by a person for the use he makes of, or a detention he exerts on, monies belonging to another, for a specified period of time. Id. Additionally, La. C.C. art. 2000 provides in pertinent part as follows:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of an agreement, at the rate of legal interest as fixed by Article 2924.
A claim for professional services becomes due upon the completion of such services and interest commences to run from the date the bill is due. James, Robinson, Felts & Starnes v. Powell, 303 So.2d 229 (La.App. 2d Cir.1974); Meeks v. Huntington School, Inc., 489 So.2d 435 (La.App. 3d Cir.1986).
Art. 2924 provides in pertinent part as follows:
A. Interest is either legal or conventional.

* * *
C. (1) The amount of conventional interest cannot exceed twelve percent per annum. The same must be fixed in writing; testimonial proof of it is not admitted in any case.

* * *
D. The provisions of this Article shall not apply to a loan made for commercial or business purposes or deferring payment of an obligation for commercial or business purposes.
Thus, the conventional interest rate is limited to 12 percent per annum except for business or commercial purposes. Spencer v. Boucher, 587 So.2d 97 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1208 (La. 1992).
In The Research Group, Inc. v. Sharp, 430 So.2d 165 (La.App. 2d Cir.1983), this court concluded that a suit on a contract for legal services rendered was not within the contemplation of the Consumer Credit Law (La. R.S. 9:3510, et seq.), and that the general law of the Civil Code concerning interest on debts applied. The court noted in dicta that if the parties had agreed in writing to pay interest as required by Article 2924, the maximum rate of conventional interest would nevertheless be 12 percent per annum. Because such a writing did not exist, the plaintiff could only recover legal interest on the debt from the date of judicial demand.
A rate of interest is usurious when it exceeds the statutory maximum. La. C.C. art. 2924; Bieber-Guillory v. Aswell, 98-559 (La.App. 3d Cir.12/30/98), 723 So.2d 1145; Succession of Drake, 359 So.2d 249 (La.App. 2d Cir.1978). Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted. La. R.S. 9:3501; Thrift Funds of Baton *419 Rouge, Inc. v. Jones, 274 So.2d 150 (La. 1973); Succession of Drake, supra.
Based upon the above law, the eighteen percent interest rate provided in the parties' contract was usurious and must be forfeited. In reaching this conclusion, we disagree with WTL's assertions that its finance charge was not interest and that Article 2924's usury provision applies only to loans. The finance charge listed in the parties' contract was for Sapp's untimely performance of his obligation to pay money and thus falls within Article 2000's discussion of interest as moratory damages. Article 2924's usury provision of paragraph C is not stated as a limitation solely on loans for the use of money. To the contrary, the language of paragraph D of that article makes reference not only to interest on a loan, but to interest owed for a non-loan commercial or business obligation. Also, as indicated in The Research Group, Inc., supra, we find that an individual's obligation to pay legal fees is not an obligation for a business or commercial purpose under Article 2924(D).
Additionally, Sapp is correct in suggesting that the judgment reflected improperly compounded interest. The $10,978.98 figure cumulated the legal fees and the eighteen percent finance charge pursuant to WTL's billing statements. We, therefore, amend and remove the interest/finance charges from the judgment and award WTL $8,566.77 plus legal interest from date of judicial demand.
In his next assignment, Sapp argues that the trial court erred when it denied his discovery request for production of WTL's daily time sheets reflecting incremental time entries of the attorney or paralegal for services actually rendered. Appellant asserts that he is entitled to audit these daily entries for accuracy and that his inability to do so hampered his ability to defend himself at trial.
WTL objected to Sapp's pre-trial request for the daily time sheets because of other privileged client data reflected on those sheets. Sapp's motion to compel production was not addressed before the time of trial.[4] Before the commencement of the second day of trial, after Sapp had received all other records from his WTL file, the trial court denied his motion to compel the production of the daily time sheets.
The client statements presented into evidence by WTL describe the amount of hours expended each day and the nature of services provided in Sapp's case by WTL's attorneys and paralegals. WTL's bookkeeper testified at trial regarding the process of inputting data from the individual daily time sheets into the computer for the purpose of generating client statements.
The trial court has broad discretion in ruling on pre-trial discovery, and an appellate court should not upset such a ruling absent an abuse of that discretion. King v. Phelps Dunbar, L.L.P., 01-1735 (La.App. 4th Cir.4/2/03), 844 So.2d 1012. This broad discretion includes the right to refuse or limit discovery of matters that are not relevant to the issues. Id.
From our review of the record, we find no abuse of the trial court's discretion. The existence of other privileged information on the daily time sheets along with the trial court's finding that Sapp's production request had been nondescript convinces us that the trial court correctly refused to grant Sapp's belated motion to compel during the course of trial.
*420 Sapp's final assignment of error argues that the trial court erred when it rendered judgment awarding $5,000 for attorney's fees. He argues that the awards were made solely on the basis of the trial counsel's affidavit and WTL's fee statement and that the trial court should have had a hearing on this issue.
La. R.S. 9:2781[5] provides the substantive basis for the trial court's award of attorney's fees, as follows:
A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section....

* * *
D.... "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services....
The trial court is vested with great discretion in arriving at an award of attorney's fees. Deutsch, Kerrigan & Stiles v. Fagan, 95-0811, 95-0812 (La.App. 1st Cir.12/15/95), 665 So.2d 1316, writ denied, 96-0194 (La.3/15/96), 669 So.2d 418. The exercise of this discretion will not be reversed on appeal without a showing of abuse of discretion. Id.
The affidavit submitted by WTL reflects that the work performed by attorneys in the firm and by WTL's trial counsel exceeded the $5000 award of the trial court. The use of the affidavit is appropriate since the trial court's own knowledge of the complicacy of the case and skill employed by the attorneys serves primarily as the basis for the factual measure of the award. Deutsch, Kerrigan & Stiles v. Fagan, supra. We find no abuse of the trial court's discretion for either the evidentiary process employed or the amount for the attorney's fees award.

Conclusion
For the foregoing reasons, we amend the judgment to exclude the conventional interest award. The amended amount of the judgment shall be $8,566.77 with an award only of legal interest from date of judicial demand. In all other respects, the judgment is affirmed. Costs of appeal are assessed to the appellant.
JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] This sum includes $2,412.21 in finance charges which began to accrue starting in July, 1999.
[2] The record shows that Sapp had previously paid a total of $10,787.76.
[3] Sapp has represented himself throughout the proceedings.
[4] Sapp also apparently attempted to subpoena certain records for trial. The subpoena is not in the record.
[5] Act. No. 1075 of 2001, effective August 15, 2001, amended and re-enacted this statute.