930 So.2d 1116 (2006)
Thomas C. RODSUWAN, M.D., Plaintiff-Appellant
v.
CHRISTUS HEALTH NORTHERN LA d/b/a Christus Schumpert Health System, Defendant-Appellee.
No. 41,043-CA.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2006.
*1117 McMichael, Medlin, D'Anna & Wedgeworth, L.L.C., by James C. McMichael, Jr., Mark S. Kavanaugh, Jr., Shreveport, for Appellant.
Cook, Yancey, King & Galloway, by Charles W. Penrod, S. Price Barker, Shreveport, for Appellee.
Before WILLIAMS, PEATROSS and MOORE, JJ.
MOORE, J.
Dr. Thomas Rodsuwan appeals two provisions of a judgment arising from his contract dispute with his former employer, Christus Health Northern Louisiana, d/b/a Christus Schumpert Health System ("Christus"). For the reasons expressed, we affirm.

Provisions of the Contract
Dr. Rodsuwan, an internist, was hired by Christus in 1998 as director of the hospitalist program. He described a hospitalist as a doctor who "specializes in taking care of inpatients; we have no clinic, we don't [do] any outside followup." In March 2000, Christus gave him an employment agreement (referred to as the "physician's agreement") whereby he would provide medical services, generally 36 "bookable" hours per week of direct patient care, to patients at Christus.[1] Issues on appeal concern only the compensation aspect of the physician's agreement.
Compensation was based on a production standard called the Relative Value Unit or RVU.[2] An attachment to the physician's agreement entitled "Exhibit `B' Production Compensation (RVU)" established three elements of compensation: RVU production compensation, bonus RVU production compensation, and on-call coverage compensation It set a maximum annual RVU compensation of $305,000 and allowed Dr. Rodsuwan to take a monthly draw of $12,500, subject to quarterly reconciliation of his RVUs. If he fell below quota, he would have to reimburse Christus.
On-call coverage compensation was defined as follows:
5. On-Call Coverage Compensation. For on-call coverage requested by Employer, other than coverage on the Bossier campus of the Schumpert Health System,[3] Physician shall receive as compensation the greater of: (a) $58.30 per RVU generated as a result of such on-call coverage by Physician or (b) the rate of $65.00 per hour of coverage provided by physician. * * * RVUs generated by Physician while on call shall not be included in determining the Physician's RVU Production Compensation or Physician's Bonus RVU Production Compensation. * * *
*1118 Other provisions affecting Dr. Rodsuwan's compensation were set out in the body of the physician's agreement:
1.7 Outside activities. Physician may not practice medicine outside the scope of this agreement without the prior written consent of the Employer's administrator or designee. Physician shall not perform or provide any administrative, consultation or medical director services to any other hospital, nursing home, or other medical or health care related facility without the prior written consent of the Employer's administrator or designee.
3.3 Billing and collection. With Physician's advice, Employer will bill and collect for Physician's professional services. All accounts receivable arising on account of Physician's services (including without limitation patient fees, medical teaching and lecturing fees, and research grants) and all monies collected in respect thereof shall belong to Employer. Physician hereby authorized Employer to accept or refuse assignment of claims or benefits. Physician agrees to complete all insurance authorizations necessary to enable Employer to bill for Physician's services. Physician agrees to take all additional steps reasonably requested by Employer to assist in the billing and collection of fees for Physician's services, including, but not limited to, prompt endorsement and delivery to Employer of all checks for professional services rendered by or in the name of Physician. Under no circumstances shall Physician bill any patient or any public or private third-party reimbursement program for any services performed or rendered by Physician pursuant to this Agreement. (Emphasis added.)
4.4 Termination without cause. Notwithstanding anything to the contrary contained herein, either party may terminate this Agreement at any time, with or without cause, upon ninety (90) days prior written notice to the other party.
On August 16, 2001, Christus's president and CEO, Wayne Sensor, advised Dr. Rodsuwan that Christus would be terminating their agreement pursuant to ¶ 4.4. Sensor's letter stated that Christus "has elected to provided [sic] you with ninety (90) days of compensation in lieu of services rendered for this period." In person, Sensor told Dr. Rodsuwan that the board wanted to "take the hospitalist program in a different direction." Sensor testified, however, that there had been issues with Dr. Rodsuwan's plummeting RVU production, his failure to turn in a single time sheet during his 19 months as medical director, and his decreasing availability at Christus's facilities. Christus gave Dr. Rodsuwan severance payments totaling $37,500, representing three months' draws.

Procedural Background
Dr. Rodsuwan filed the instant suit in June 2002, claiming 90 days' "full pay" (not just his draw) under the physician's agreement, 90 days' compensation for medical director services, penalties and attorney fees under the Wage Payment Act, La. R.S. 23:631.
Christus reconvened, urging that contrary to ¶ 1.7, Dr. Rodsuwan had been "moonlighting" at other hospitals without the consent of Christus's administrator, and had generally failed to work the required hours and perform the required services under the physician's agreement. Christus demanded, inter alia, all compensation earned from Dr. Rodsuwan's moonlighting and reimbursement pursuant to the quarterly reconciliation of RVU production.
Christus later filed a request for admissions, asking Dr. Rodsuwan to admit that his only claims for recovery were "(1) Pay under your Medical Director Agreement *1119 with Christus Schumpert; (2) Bossier on-call compensation; (3) Production or bonus compensation under your employment agreement with Christus Schumpert; (4) Penalties under R.S. 23:631; (5) Interest; and (6) Attorney's fees." The response: "Rodsuwan admits that his current claims consist of items 1-6 in Request for Admission No. 6."
The matter proceeded to trial in September 2004. Dr. Rodsuwan admitted failing to turn in time sheets, contrary to the medical director agreement. He also admitted that without Christus's final approval, he began working at Northwest Developmental Center in July 2001, usually about 12 hours a week, but felt that Christus officials were aware of this and acquiesced in it. He introduced evidence of his total on-call earnings from both Christus Bossier and Christus Schumpert over the life of the physician's agreement.
Christus's CPA, Joseph David Taylor, testified that Dr. Rodsuwan's RVU production had greatly diminished in 2001; for the 10½ months in which he took his $12,500 draw and a first-quarter bonus, he had generated RVUs worth only $92,352.78; consequently, he owed Christus $21,738.60 based on quarterly reconciliation. Christus also introduced time sheets from Northwest Developmental Center showing that from July 1 through August 16, 2001, Dr. Rodsuwan received compensation totaling $19,169.50 from Northwest.
The district court filed written findings of fact and conclusions of law, first outlining the factual background. Addressing the parties' respective demands, the court held:
(1) Dr. Rodsuwan owed Christus $21,738.60 in excess compensation (the court explicitly adopted CPA Joseph Taylor's findings).
(2) Christus owed Dr. Rodsuwan $9,733.33 in severance pay for Christus Bossier on-call service (there is no mention of Christus Schumpert on-call service).
(3) Dr. Rodsuwan owed Christus the $19,169.50 he earned from Northwest while subject to the physician's agreement, ¶ 3.3.
(4) Christus owed Dr. Rodsuwan nothing for medical director services, as he never filed any time sheets to document this claim.
In accordance with these findings, the court rendered judgment against Dr. Rodsuwan and in favor of Christus for $31,174.77. Dr. Rodsuwan has taken the instant appeal, contesting the denial of his claim for post-termination wages for Christus Schumpert on-call services and the award to Christus of all compensation he earned from Northwest Developmental Center.

Discussion: Christus Schumpert On-Call Wages
By his first assignment of error, Dr. Rodsuwan urges the court erred in denying his claim for post-termination wages for services he would have rendered at Christus Schumpert on-call. He contends that the physician's agreement clearly entitled him to 90 days' post-termination wages, and since the court awarded him Christus Bossier on-call wages, there was no rational basis to deny the Christus Schumpert on-call claim. He also shows that in his original petition, he prayed for "on-call coverage compensation." Citing Christus's payment summary, he shows that he averaged $3,413.17 per month in Christus Schumpert on-call compensation, so requests a judgment of $10,239.51 on this claim.
Christus concedes that the court allowed Dr. Rodsuwan to introduce evidence of his Christus Schumpert on-call compensation, but argues that Dr. Rodsuwan did not raise this particular claim in the trial court *1120 and cannot raise it for the first time on appeal. State v. Williams, XXXX-XXXX (La.10/15/02), 830 So.2d 984; Future Trends LLC v. DeGeorge, 05-355 (La.App. 5 Cir. 11/29/05), 917 So.2d 646. Specifically, Christus cites the answer to request for admissions No. 6, in which Dr. Rodsuwan admitted a claim only for "Bossier on-call compensation"; it contends that this conclusively established, under La. C.C.P. art. 1468, that he was not claiming Christus Schumpert on-call.
By reply brief, Dr. Rodsuwan urges that the Christus Schumpert on-call claim was actually regulated by Exhibit "B" to the physician's agreement and thus was part of the "production or bonus compensation" which he claimed in the request for admissions.
We have closely read the physician's agreement and find that under Exhibit "B," ¶ 5, on-call compensation may indeed be calculated as a dollar amount for each RVU generated as a result of on-call service. The issue therefore is whether Dr. Rodsuwan waived his claim for Christus Schumpert on-call compensation by response to requests for admissions.
Pursuant to La. C.C.P. art. 1467, a party may serve upon any other party a written request for admission of the truth of any relevant matters of fact. Any matter deemed admitted under Art. 1467 is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." La. C.C.P. art. 1468. Admissions may be used to establish a controverted issue constituting the crux of the matter in litigation. Guo Jie v. Certified Lloyds Plan, 34,545 (La.App. 2 Cir. 4/4/01), 785 So.2d 118, and citations therein. The district court has broad discretion in regulating pretrial discovery, and its decisions will not be disturbed on appeal absent a clear abuse of that discretion. Moak v. Illinois Central R. Co., 93-0783 (La.1/14/94), 631 So.2d 401; Walker, Tooke & Lyons LLP v. Sapp, 37,966 (La. App. 2 Cir. 12/10/03), 862 So.2d 414, writ not cons., XXXX-XXXX (La.3/19/04), 869 So.2d 836.
When a judgment is silent with respect to any demand which was at issue under the pleadings, the silence constitutes an absolute rejection of the demand. Sun Finance Co. v. Jackson, 525 So.2d 532 (La.1988); Schaeffer v. Schaeffer, 40,562 (La.App. 2 Cir. 10/26/05), 914 So.2d 631.
Christus correctly shows that the petition alleged only "on-call coverage compensation" and made a general claim for "all amounts due under the employment contracts." By requests for admission, Christus listed six elements of economic loss not including Christus Schumpert on-calland asked Dr. Rodsuwan to admit that these were his only claims. He admitted it without clarification or limitation, and never moved to withdraw or amend his admission to include Christus Schumpert on-call. His pretrial memorandum, filed six days before trial, also did not specify any claim for Christus Shumpert on-call. In fact, the first mention of it occurred at trial, during cross examination of Christus's CPA, Joseph Taylor. Over Christus's objection, the court permitted Mr. Taylor to testify but made the objection "general" pending a review of the pleadings. The court's silence is a tacit finding that Dr. Rodsuwan did not properly plead Christus Schumpert on-call; at any rate, the judgment absolutely rejected the claim. Schaeffer v. Schaeffer, supra.
On this record, we cannot say the district court abused its vast discretion. Moak v. Illinois Central R. Co., supra; Walker, Tooke & Lyons LLP v. Sapp, supra. The petition presented general claims arising out of two complex contracts; by discovery, Christus attempted to narrow the issues. Christus reasonably relied on Dr. Rodsuwan's answer to the *1121 request for admissions, effectively denying the claim for Christus Schumpert on-call. The issue was not raised until late in the trial. Notably, Dr. Rodsuwan filed a motion for new trial which did not contest the rejection of Christus Schumpert on-call. While we recognize that a different pretrial strategy would have entitled Dr. Rodsuwan to press this claim, we cannot say the district court abused its discretion in finding that he repeatedly declined to do so.[4] This assignment of error lacks merit.

Outside Compensation
By his second assignment of error, Dr. Rodsuwan urges the court erred in finding the physician's agreement contained a clause that entitled Christus to compensation he earned from Northwest Developmental Center. He contends that ¶ 3.3 is ambiguous in that it is limited to "accounts receivable" and "services" rendered at Christus; it does not necessarily extend to services performed elsewhere. He also contends, citing La. C.C. art. 2050, that if this passage is clear by itself, it is ambiguous in context: as a whole, ¶ 3.3 only makes Christus responsible for billing and collecting insurance for services rendered at Christus. He adds that Wayne Sensor, his supervisor, was always aware of his outside work but never took any action to recover his outside wages until after this suit was filedthus proving the parties did not intend for Christus to own all his outside compensation. In support, he cites the "operation under the contract" rule of Total Minatome Corp. v. Union Texas Products Corp., 33,433 (La.App. 2 Cir. 8/23/00), 766 So.2d 685, and other cases.
Christus responds that ¶ 3.3 explicitly refers to "all accounts receivable" and thus makes Dr. Rodsuwan liable for all monies received from outside sources. It submits that the court's reading of the physician's agreement is reasonable and not plainly wrong.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. The plain meaning rule of construction applies to employment contracts. Green v. New Orleans Saints, XXXX-XXXX (La.11/13/00), 781 So.2d 1199; Tompkins v. Schering Corp., 441 So.2d 455 (La.App. 2 Cir.1983). Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050; Shepard v. Phycor of Ruston Inc., 29,181 (La.App. 2 Cir. 5/7/97), 711 So.2d 288. Courts should not resort to construction in pari materia when the contested provision is clear and explicit. Barrera v. Ciolino, 92-2844 (La.5/5/94), 636 So.2d 218.
The physician's agreement, ¶ 3.3, provides, "All accounts receivable arising on account of Physician's services (including without limitation patient fees * * *) and all monies collected in respect thereof shall belong to Employer." Contrary to Dr. Rodsuwan's argument, this is not limited to services rendered at Christus; it applies to all monies collected in respect to the physician's services. We also find no ambiguity in the fact that ¶ 3.3 bears the heading "Billing and collection"; other provisions of the paragraph delineate Christus's obligations in that area. The contested passage is, in our view, clear and explicit, but if corroboration were needed, we would note that ¶ 1.7 declares, "Physician may not practice medicine outside the scope of this agreement without the prior written consent of the Employer's administrator or designee." This is consistent *1122 with assigning to Christus Schumpert any compensation derived from prohibited outside employment. Dr. Rodsuwan's suggested interpretation of ¶ 3.3 strikes us as strained and unreasonable, and the district court committed no error in dismissing it. This assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. Appellate costs are to be paid by the appellant, Dr. Thomas C. Rodsuwan.
AFFIRMED.
NOTES
[1] Christus also gave him a "medical director agreement" which is not a subject of the appeal but is mentioned to give context to the litigation.
[2] RVU was defined in part as "Relative Value Units factors utilized by Medicare associated with professional medical services personally provided by Physician as defined in accordance with the Physician's Current Procedural Terminology Codes using solely the `Work RVU' factors published by the Health Care Financing Administration in its Resource Based Relative Value Scale `1999 National Physician Fee Schedule Relative Value File,' revised June 24, 1999."
[3] Separate provisions for on-call compensation at Christus's Bossier City facility were set out in a letter dated January 23, 2001, and these are not at issue in the appeal.
[4] An explicit finding by the district court in its written reasons would have been helpful to the parties and to this court for purposes of review.