STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-753

DARREL WILLIAMS

VERSUS

HOUSING AUTHORITY OF THE CITY OF LAFAYETTE
AND WALTER GUILLORY

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20072953
HONORABLE DURWOOD CONQUE, JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Billy Howard Ezell, J. David Painter, and Shannon J. Gremillion, Judges.

AFFIRMED.

Roy J. Richard, Jr.
Daniel James Stanford
117 Caillouet Place
Lafayette, LA 70501
Counsel for Defendants-Appellants:
      Lafayette Housing Authority and Walter Guillory

M. Candace Hattan
P.O. Drawer 91850
Lafayette, LA 70509
Counsel for Plaintiff-Appellee
      Darrel Williams

**PAINTER, Judge.**

Defendants, the Lafayette Housing Authority (LHA) and Walter Guillory, appeal the trial court's judgment finding it liable for injuries sustained by Plaintiff, Darrel Williams, when he fell in a hole allegedly located on LHA controlled property. After considering the Defendants' assignments of error, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

On August 14, 2006, Plaintiff went to visit his sister, Lois Wells, at 1128 Irene Street in the Irene Street Housing Development in Lafayette, Louisiana. The Irene Street Housing Development is owned and/or controlled by the LHA. The parking place assigned to 1128 Irene Street was occupied, so Plaintiff parked at the curb in front of the house. He got out of his vehicle, and as he walked across the grass between the curb and the sidewalk, he fell into a three foot deep hole and was injured.

On June 6, 2007, Plaintiff filed suit against the LHA and Walter Guillory, its Executive Director. At the same time, Plaintiff filed and served Defendants with Requests for Admissions as follows:

REQUEST FOR ADMISSION NO.1

Admit or deny that the property as described in the attached Petition is property which you have custody, control and/or a duty to manage.

REQUEST FOR ADMISSION NO.2

Admit or deny that you own and/or are responsible for maintenance and upkeep of the site of the defective condition described in the attached Petition.

2

Defendants answered the petition with a general denial on June 27, 2007. On September 14, 2007, Defendants filed responses to the Requests for Admissions, admitting both.

The matter was tried to the judge on February 25, 2009, and judgment was rendered in favor of Plaintiff on March 20, 2009. Defendants appeal.

**DISCUSSION**

*Custody*

Defendants first assert that the trial court erred in finding that their admission that the LHA had custody of the property described in the petition and where the accident occurred is an admission that the LHA had custody of the location of the hole into which Plaintiff fell. Defendants argue that the petition does not make it clear that the hole was located between the curb and the sidewalk and that had they known its actual location, they would have responded differently in that they contend that the area between the sidewalk and the curb was not their responsibility. They further assert that the trial court erred in refusing to allow them to amend their answer and/or pleadings to plead the affirmative defense of third party fault as a result of their receipt from Plaintiff of a photograph showing the location of the hole. They assert that the late production of the photograph denied them the opportunity to develop their case. Defendants had ample opportunity to inspect the property and to depose the parties and/witnesses prior to the exchange of the photograph. Had they done so, they would have discovered the location of the hole into which Plaintiff fell.

The trial court denied Defendants' motion to amend its answer stating that:

THE COURT: I am going to deny the motion for leave of court to amend as being untimely, counsel for the plaintiff having not received

3

a copy until the Court presented it to her this morning in connection with the motion to continue, which was scheduled at 10:00 this morning. And I had this, and I said, well, what about this motion for leave of court to file an amending answer? And she said, what are you talking about? So there's been no opportunity to do that.

And the admissions I think are admitted. There has been no motion pretrial, other than the day of trial to withdraw those. I mean, rules are rules. We have to follow them. If the housing authority chooses to come to trial with the degree of preparation that they have exhibited in this case then that's certainly their prerogative.

La.Code Civ.P. art. 1151 provides, in pertinent part that: "A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the . . . answer may be amended only by leave of court or by written consent of the adverse party." La.Code Civ.P. art 1468, entitled Requests for admissions; effect of admission, provides that:

Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Article 1551 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Any admission made by a party under Articles 1466 and 1467 is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.

"The district court has broad discretion in regulating pretrial discovery, and its decisions will not be disturbed on appeal absent a clear abuse of that discretion." *Rodsuwan v. Christus Health Northern Louisiana*, 41,043, p. 7 (La.App. 2 Cir. 5/17/06), 930 So.2d 1116, 1120. Given LHA's failure to investigate before answering the Requests for Admissions, the time that elapsed between the responses to the admissions and the trial, and the last minute motion to amend, we find no abuse

4

of the trial court's discretion in its decision to disallow the amendment and/or the withdrawal of the admissions.

*Knowledge of the Defect*

Defendants further assert that the trial court erred in finding that they had actual or constructive knowledge of the defect at the time of the incident. Defendants cite La.R.S. 9:2800 in part as follows:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
> . . . .
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
>
> D. Constructive notice shall mean the existence of facts which infer actual knowledge.

The custody was both admitted by Defendants in the responses to Plaintiff's Requests for Admissions and proven through the uncontradicted testimony of Lois Wells, who stated that the property, including the area in which the hole was located, was maintained solely by employees of the LHA, wearing uniforms identifying them as such, and driving LHA trucks. She further testified that she saw employees of the LHA perform maintenance around the edge of the hole with a weed-eater two or three times during the month prior to the accident and that the hole was later filled in by employees of the LHA. Defendants argue that Wells' knowledge of the hole does not prove that the LHA had notice unless Plaintiff shows that an actual employee or

5

representative of the LHA was actually notified. However, Wells' uncontradicted testimony was that employees of the LHA did lawn maintenance around the edge of the hole several times prior to the accident. We find that this testimony is sufficient to prove notice to the LHA.

*Causal Link*

Defendants next assert that Plaintiff failed to show that his post-accident symptoms were related to the fall rather than to his previous disability. Defendants point to Plaintiff's testimony that he has been disabled since 2001 and has a history of neck and back pain prior to the accident.

Plaintiff's burden in this case is to prove his injuries and a causal connection between the injuries and the accident by a preponderance of the evidence. In spite of Plaintiff's preexisting condition, he is entitled to compensation if the accident aggravated that condition. Plaintiff must, however, establish a causal link between the accident and the aggravation. *White v. State Farm Mut. Auto. Ins. Co.*, 97-1704 (La.App. 3 Cir. 4/29/98), 713 So.2d 618, *writ denied*, 98-1429 (La. 7/2/98), 724 So.2d 741.

Our review of the testimony reveals that Plaintiff's prior disability was the result of heart problems, Hepatitis C, and high blood pressure. Plaintiff testified that prior to the accident, he worked eight hours a day, and was able to ride his bicycle "all day" to do errands for his employer. He further stated that after the accident, he couldn't ride his bicycle more than half a mile, his neck and back pain occurred more frequently, he had trouble sleeping, and wasn't able to work a full eight hours.

"Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error."

6

*Blackshear v. Allstate Ins. Co.*, 94-765, pp. 10-11 (La.App. 3 Cir.12/7/94); 647 So.2d 589 at 595; *citing Mart v. Hill*, 505 So.2d 1120 (La.1987).

*Viviano v. Progressive Sec. Ins. Co.*, 05-125, p. 8 (La.App. 3 Cir. 1/11/06), 920 So.2d 313, 319, *writ denied*, 06-0359 (La. 4/28/06), 927 So.2d 290. Given the evidence adduced at trial, we find no error in the trial court's conclusion that Plaintiff established a causal link between the accident and his injury.

*Damages*

Finally, Defendants assert that Plaintiff failed to prove the amount of lost income resulting from the accident and injury. The trial court discussed Plaintiffs' lost income as follows:

> At the time of the accident, plaintiff testified that he was employed by Elizabeth Dugal and that he was working 8 hours a day, 5 days a week, at a pay rate of $7.00 per hour. Therefore, plaintiff's pay was approximately $280.00 per week. After the accident, plaintiff testified that he was unable to work and had to take two (2) weeks off of work. Based upon plaintiff s uncontroverted testimony, the court awards plaintiff $560.00 in lost income.

> The plaintiff further testified that, since the occurrence complained of in this lawsuit, he has not been able to work the same numbers of hours he was working before the accident. . . . .

> . . . .

> Plaintiff submits that after the accident, he had to reduce the amount of time he worked for Elizabeth Dugal from 8 hours to 5 hours a day. At the time of the accident, plaintiff's rate of pay was $7.00 per hour. Therefore, plaintiff has lost approximately $21.00 per day because of his diminished capacity to perform the only work he knows. Plaintiff testified that around May of 2007, he quit working for Ms. Dugal because he "had a disagreement with her". However, plaintiff began employment with another employer doing the same type of work that he used to do for Ms. Dugal.

> Plaintiff testified that he continued to only be able to work 5 hours a day, 5 days a week. Due to the lack of medical evidence as to

plaintiff's current level of disability as a direct result of this accident, it is difficult for the court to determine the length of time plaintiff is entitled to loss of earning capacity. Based upon the facts of the case, the testimony given, and the evidence submitted, the court finds that it is fair and reasonable to award plaintiff loss of earning capacity beginning with his return to work approximately 2 weeks after the August 16, 2006 accident and ending with his last appointment with Dr. Cobb on August 13, 2007.

Although it is difficult to discern the extent of plaintiffs injuries as a result of this incident because of his pre-existing condition, plaintiff's uncontroverted testimony is that he could not return to work full time after this accident because of his back and neck pain. Plaintiff's testimony is supported by Dr. Cobb's December 2006 notation that he is "unable to work at this time, that plaintiff get MRIs of his cervical and lumbar spine, and that plaintiff complete a physical therapy program of 3 days a week for 6 weeks". The medical records show that at his December 21, 2006 visit at the Physical Therapy Clinic of Lafayette, plaintiffs current level of function was listed as "disabled".

However, plaintiff testified that he continued to work at this time and the medical records show that plaintiff was seen for therapy only for a total of 6 treatment visits. Moreover, as of the date of trial, plaintiff had not undergone the recommended MRI procedures. At plaintiff s visit with Dr. Cobb on August 13, 2007, Dr. Cobb again recommended a physical therapy program along with cervical and lumbar spine MRIs. Plaintiff was not given an appointment to return at that time. Based upon the above factors, the court finds that plaintiff is entitled to an award for loss of income after his return to work 2 weeks after the accident, on or around September 4, 2006, until his release from Dr. Cobb's care on August 13, 2007, or approximately 49 weeks. As stated above, plaintiff lost income in the amount of $21.00 per day, or about $105.00 per week. Based upon plaintiffs uncontroverted testimony and the medical evidence submitted, the court awards the plaintiff an additional $5,145.00 for loss of income due to the injuries suffered in this incident.

"Under Louisiana jurisprudential law, wage losses may be established by any proof which reasonably establishes the claim, including the plaintiff's own reasonable testimony." *Todd v. Delta Queen Steamboat Co.*,07-1518, p. 4 (La.App. 4 Cir. 8/6/08), 15 So.3d 107, 112, (quoting *Daniels v. Burridge*, 00-1089, p. 7 (La.App. 4 Cir. 3/21/01), 785 So.2d 906, 911). In this case, the trial court clearly found

8

Plaintiff's testimony reasonable and credible. On reviewing the record herein, we find that the credibility evaluation had a reasonable basis in the record and, therefore, we will not overturn the award made on that basis.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendants.

**AFFIRMED.**